## Case No. 15,340.

### UNITED STATES v. HEINEGAN.

[1 Cranch, C. C. 50.] [1]

Circuit Court, District of Columbia. Jan. Term, 1802.

#### COURTS — JURISDICTION — DISTRICT OF COLUMBIA.

1. This court has jurisdiction of prosecutions for gaming under the law of Virginia, although that law directs the prosecution to be had before a justice of the peace.

2. An offence against the commonwealth of Virginia, committed in Alexandria before the first Monday of December, 1800, may be prosecuted in this court as an offence against the United States.

3. When the penalty is fixed by law, the fine is not to be assessed by the jury.

Indictment for gaming contrary to the act of Virginia (Rev. Code, p. 184. § 5). Motion to quash the indictment, because the statute points out the mode of prosecution, namely, by conviction before a justice of the peace.

For the traverser it was contended that where another mode of recovering the penalty is provided than by indictment, there indictment cannot be supported; nor can an indictment be maintained unless there be a prohibitory clause. 2 Hale, P. C. 171; Rex v. Robinson, 2 Burrows, 803; Rex v. Royall, 2 Burrows, 832. The act of assembly says "that if any person shall play, &c., every such person, upon conviction thereof before any justice of peace in any county in this commonwealth, by the oath of one or more credible witness or witnesses, &c., shall forfeit and pay twenty dollars, to be levied by distress and sale of the offender's goods, by warrant under the hand of the justice before whom such conviction shall be, and for the use of the poor of the parish wherein such offence shall be committed. And, moreover, every person so convicted shall be committed

to the county jail, there to remain until he give sufficient security for his good behavior for twelve months." The 5th section of the act concerning jurors (Rev. Code, 107) does not extend to the district courts, nor does it necessarily imply that indictment is in all cases a proper mode of recovering a penalty. A presentment is a mere informal accusation. It only denounces the fact in order that it may be punished in legal form. The transfer of jurisdiction has not altered the laws of Virginia in this part of the district. But by the first section of the act concerning the District of Columbia, February 27, 1801 (2 Stat. 103), those laws are expressly declared to remain in force. And although, by the 5th section, this court has cognizance of all offences, yet, by the 11th section, the justices of the peace here are to have the same cognizance as justices of the peace in Virginia. By the letter of the act of assembly the penalty does not accrue until a conviction before a justice of the peace has taken place. By the third section of the supplemental act of congress of 3d March, 1801 (2 Stat. 115), this court is to exercise the same power and jurisdiction as the district courts of Virginia. But those courts have no jurisdiction of this offence. The 2d section of that act did not mean to limit the mode of prosecution, but to alter the style. Besides, the fact is stated in the indictment to have been committed before the 3d of March, 1801, and therefore the act of that date cannot alter the mode of prosecution then existing. The penalty was to accrue to the poor of the parish, and upon the commission of the offence the right to the penalty vested in the parish. The subsequent act of congress could not take away this vested right. If the remedy by indictment is cumulative, it ought not to be countenanced by the court. 2 Hawk. P. C. 301, c. 25, § 4, 7 Coke, 36a; Castle's Case, Cro. Jac. 644.

Mr. Mason, contra. The powers of this court are not limited by those of the district courts of Virginia. The words of the 5th section of the act of congress concerning the District of Columbia are peremptory. This court shall have cognizance of all offences, &c. But the district courts of Virginia had cognizance of this offence by the act of 1797 (chapter 2). No penalty can be recovered but by indictment, presentment, or action of debt. Act of congress of 3d March, 1801, § 2 (2 Stat. 115). The case cited from 2 Burrows only shows that the remedy by indictment is not the best mode. By the constitution of the United States the trial of all criminal cases must be by jury. If the act of Virginia giving cognizance to a justice of peace is repugnant to the constitution, the latter must prevail. The act of 3d of March is not ex post facto, it only directs the mode of prosecution.

THE COURT refused to quash the indictment, relying on the 2d section of the act of 3d of March, 1801. The jury found a ver-

dict against the traverser, stating the fact to have been committed before the first Monday in December, 1800, the day appointed by the act of congress of 1790 for the removal of the seat of government of the United States to the District of Columbia.

Mr. Mason moved for judgment on the verdict, and contended that there never had been a time when the laws of Virginia were not in force in this part of the district.

Mr. Swann, for the traverser, contended that this was an offence against the commonwealth of Virginia, and not against the United States, and that the penalty accrued to the commonwealth, who might maintain an action of debt for it.

Before KILTY, Chief Judge, and MARSHALL, Circuit Judge.

KILTY, Chief Judge. The question to be determined, is, whether on the motion of the attorney for the United States, judgment shall be given on the verdict of the jury. The effect of the verdict is admitted to be that the offence was committed before the 1st Monday of December, 1800, and within one year from the presentment, so that the question will turn upon the jurisdiction of this court, as to an offence committed within the corporation of Alexandria before the said 1st Monday of December, 1800. I think it necessary to recur to the origin of the jurisdiction of the United States within this district. By the 8th section of the 1st article of the constitution, congress are empowered "to exercise exclusive legislation in all cases whatsoever over such district (not exceeding ten miles square) as may, by cession of particular states, and the acceptance of congress, become the seat of the government of the United States." In December, 1789, an act passed in Virginia declaring that a tract of country as therein described, should be forever ceded and relinquished to the congress and government of the United States, in full and absolute right and exclusive jurisdiction, pursuant to the 8th section of the 1st article of the constitution of the United States, with a proviso that the jurisdiction of the laws of Virginia, over individuals residing within the limits of such cession, should not cease or determine until congress, having accepted the cession, should by law provide for the government thereof. The congress, by an act passed in 1790 (1 Stat. 130), did accept the cession of Virginia and Maryland, of a district as therein described, which was altered, by an act passed in 1791 (1 Stat. 214), so as to include Alexandria, and in the act of 1790, it was provided that the operation of the laws of the state within such district, should not be affected by this acceptance, until the time fixed for the removal of the government thereto, and until congress should otherwise by law provide. The particular place for the seat of government, was afterwards established by the president's proclamation dated the 30th of March, 1791. I lay it down as a consequence flowing from these several public acts, that from the date of the proclamation, all the laws of Virginia then in existence, or thereafter to be made respecting persons and property, within the cession, were made subject to the future controlling power of congress, in such manner as they might exercise it after the 1st Monday in December, 1800; and that the security of persons and rights, and the punishment of offences within the said district, were liable to the said jurisdiction of congress under any laws to be constitutionally made.

In this situation of the inhabitants of this district, there never was any period of time at which the law had not operation to punish offences, or at which breaches of the laws committed, but not prosecuted, or commenced to be prosecuted, would cease to be offences, or cease to be punishable. It appears to me that when the operation of the laws was reserved in the acts of cession and acceptance, the reservation included a power in the state courts to put those laws in execution, and therefore I have formed the opinion that the power of those courts remained complete until the 27th of February, 1801, when the act respecting the District of Columbia passed, establishing this court and thereby providing otherwise by law. Under the act of 1790, the congress had no power to affect the operation of the laws of Virginia until the 1st Monday of December, 1800. They then had the power, but the operation of those laws was not affected till congress provided otherwise by law. It must have occurred to the framers of those laws, that no point of time could be fixed on for the change of jurisdiction, when all offences would be acted upon and tried, and when there should be no offences remaining committed and not tried. The courts of Virginia, while they possessed the power of trying offences, might have exercised it as expeditiously as their laws would admit, so as to leave few cases undecided. But when the jurisdiction of the United States courts commenced, that of the Virginia courts ceased; for by the words "the operation of the laws shall not be affected until the time fixed for the removal, and until congress shall otherwise by law provide," we must understand that when these events happened, the operation was affected. The question arises, then, as to the manner of punishing offences committed before the removal, or the assumption, and not acted upon in any manner by the Virginia courts. I cannot admit the supposition that such offences were to remain unpunished. To suppose that they were to be punished by the courts of Virginia out of the district, would be to defeat the purposes for which the jurisdiction was taken, and would tend to prevent the exercise of it.

The 14th section of the act concerning the district provides for the continuing over to this court all actions, process, &c. depending

The case properly presented this question, and it belonged to the jury to determine it.

For these reasons, there must be a new trial, with costs to abide the event.